**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **WAYNE D. GODFREY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 10-565** |
| | ) **Chief Judge Gary L. Lancaster** |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Gary L. Lancaster
Chief Judge                                                          May _12_, 2011

## I.    Introduction

Plaintiff Wayne D. Godfrey ("Godfrey") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f].    The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56.    (ECF Nos. 8 & 12).    For the reasons that follow, Godfrey's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted,

1

and the administrative decision of the Commissioner will be affirmed.

## II. Procedural History

Godfrey protectively applied for DIB and SSI benefits on February 8, 2007, alleging disability as of October 28, 2003.[1] (R. at 9, 127, 135, 279). The applications were administratively denied on April 25, 2007. (R. at 73, 79, 85). Godfrey responded on June 15, 2007, by filing a timely request for an administrative hearing. (R. at 90). On April 4, 2008, a hearing was held in Johnstown, Pennsylvania, before Administrative Law Judge Robert C. Deitch (the "ALJ"). (R. at 25). Godfrey, who was represented by counsel, appeared and testified at the hearing. (R. at 30-51). Dr. Joseph J. Bentivegna, an impartial vocational expert, also testified at the hearing. (R. at 51-58). In a decision dated April 23, 2008, the ALJ determined that Godfrey was not "disabled" within the meaning of the Act. (R. at 9-18). The Appeals Council denied Godfrey's request for review on March 26, 2010, thereby making the ALJ's decision the final decision of the Commissioner in this case. (R. at 1). Godfrey commenced this action on May 5, 2010, seeking judicial review of the Commissioner's decision. (ECF Nos. 1 & 3). Godfrey and the Commissioner filed motions

---

[1] Godfrey filed a previous application for benefits under Title II on February 28, 2006. (R. at 116). That application was administratively denied on October 11, 2006. (R. at 9, 68).

for summary judgment on August 27, 2010, and October 15, 2010,
respectively. (ECF Nos. 8 & 12). These motions are the subject
of this memorandum opinion.

## III. **Standard of Review**

This Court's review is plenary with respect to all
questions of law. *Schaudeck v. Commissioner of Social Security
Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect
to factual issues, judicial review is limited to determining
whether the Commissioner's decision is "supported by substantial
evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43,
46 (3d Cir. 1994). The Court may not undertake a *de novo* review
of the Commissioner's decision or re-weigh the evidence of
record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-
1191 (3d Cir. 1986). Congress has clearly expressed its
intention that "[t]he findings of the Commissioner of Social
Security as to any fact, if supported by substantial evidence,
shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence
"does not mean a large or considerable amount of evidence, but
rather such relevant evidence as a reasonable mind might accept
as adequate to support a conclusion." *Pierce v. Underwood*, 487
U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal
quotation marks omitted). As long as the Commissioner's
decision is supported by substantial evidence, it cannot be set
aside even if this Court "would have decided the factual inquiry

3

differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all

4

medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in

significant numbers in the national economy. §§
404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157
L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative
determination is sought, the agency's decision cannot be
affirmed on a ground other than that actually relied upon by the
agency in making its decision. In *Securities & Exchange
Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91
L.Ed. 1995 (1947), the Supreme Court explained:

When the case was first here, we emphasized a simple
but fundamental rule of administrative law. That rule
is to the effect that a reviewing court, in dealing
with a determination or judgment which an
administrative agency alone is authorized to make,
must judge the propriety of such action solely by the
grounds invoked by the agency. If those grounds are
inadequate or improper, the court is powerless to
affirm the administrative action by substituting what
it considers to be a more adequate or proper basis.
To do so would propel the court into the domain which
Congress has set aside exclusively for the
administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of
Appeals for the Third Circuit has recognized the applicability
of this rule in the Social Security disability context.
*Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001).
Thus, the Court's review is limited to the four corners of the
ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491
(W.D.Pa. 2005).

## IV.  The ALJ's Decision

At the hearing, Godfrey amended his alleged onset date to
September 1, 2006.  (R. at 27-28).  The ALJ determined that
Godfrey had not engaged in substantial gainful activity
subsequent to that date.  (R. at 11).  Godfrey was found to be
suffering from a left knee impairment and degenerative disc
disease, which were deemed to be "severe" within the meaning of
20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii).  (R. at
11-12).  The ALJ concluded that these impairments did not meet
or medically equal an impairment listed in 20 C.F.R. Part 404,
Subpart P, Appendix 1 (the "Listing of Impairments" or, with
respect to a single impairment, a "Listed Impairment" or
"Listing").  (R. at 12).

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the
ALJ assessed Godfrey's residual functional capacity as follows:

After careful consideration of the entire record, the
undersigned finds the claimant retains the residual
functional capacity to perform the exertional demands
of sedentary work, with certain modifications.  Under
sedentary work restrictions, he cannot lift more than
ten pounds, can customarily not stand or walk more
than two of eight hours a workday, can customarily not
sit more than six of eight hours a workday, and cannot
stoop more than infrequently (20 CFR 404.1567,
416.967, and Social Security Rulings 83-10, 96-8p).
Additionally, the claimant cannot perform pushing,
pulling, or pedal motions with his left lower
extremity.  He can have no more than minimal exposure
to extreme temperatures and humidity.

7

(R. at 13). Godfrey had "past relevant work"[2] experience as a

truck driver, warehouse dockworker and road tester. (R. at 51).

Dr. Bentivegna classified these positions at the "heavy,"[3]

"medium"[4] and "light"[5] levels of exertion, respectively. (R. at

51-52). Since Godfrey was found to be limited to "sedentary"[6]

work, it was determined that he could not return to his past

relevant work. (R. at 16).

Godfrey was born on August 8, 1960, making him forty-six

years old on his amended onset date and forty-seven years old on

the date of the ALJ's decision. (R. at 16, 30-31). He was

classified as a "younger person" under the Commissioner's

---

[2] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the previous fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[3] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. §§ 404.1567(d), 416.967(d).

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[6] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

8

regulations.  20 C.F.R. §§ 404.1563(c), 416.963(c).  He had a

"limited education" and an ability to communicate in English.[7]

(R. at 17, 237, 245); 20 C.F.R. §§ 404.1564(b)(3), (5),

416.964(b)(3), (5).  Given the applicable residual functional

capacity and vocational assessments, the ALJ concluded that

Godfrey could work as an assembler, a sticker, a lacer, or a

sack repairer.  (R. at 17).  Dr. Bentivegna's testimony

established that these jobs existed in the national economy for

purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[8]  (R.

at 54-55).

## V.  Discussion

Godfrey's knee impairment dates back to September 4, 2003,

when he slipped on an open case of olive oil and twisted his

left knee while trying to unload a truck.  (R. at 408, 416).  A

torn meniscus resulted from the injury.  Although Godfrey had

undergone several operations to repair the damage to his knee,

he testified at the hearing that he was still suffering from

multiple meniscus tears.  (R. at 40).  He further stated that

his left leg was 50% weaker than his right leg.  (R. at 41).

---

[7] Godfrey testified that he had completed the eleventh grade before becoming a
certified mechanic.  (R. at 31).

[8] At the fifth step of the sequential evaluation process, "the Commissioner
bears the burden of proving that, considering the claimant's residual
functional capacity, age, education, and past work experience, [he or] she
can perform work that exists in significant numbers in the regional or
national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003).
This burden is commonly satisfied by means of vocational expert testimony.
*Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

The first issue raised by Godfrey concerns the ALJ's determination at the third step of the sequential evaluation process, which centers on the Listing of Impairments. (ECF No. 9 at 3, 7-12). The Listing of Impairments describes impairments which render a claimant *per se* disabled without regard to his or her age, education, or past work experience. *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000). In order to qualify as *per se* disabled, a claimant must demonstrate that his or her impairment (or combination of impairments) either "matches" a Listing or is "equivalent" to a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). An impairment "matches" a Listing only if it satisfies *all* of the relevant medical criteria. *Id.* at 530. An impairment is "equivalent" to a Listed Impairment only if it is supported by medical findings equal in severity to *all* of the criteria applicable to the most similar Listing. *Id.* at 531. The claimant bears the burden of presenting evidence to support his or her allegation of *per se* disability. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

Godfrey argues that the ALJ erred in determining that his knee impairment did not meet or medically equal Listing 1.02A. (ECF No. 9 at 3, 7-12). The language of Listing 1.02A reads as follows:

10

1.02 *Major dysfunction of a joint(s) (due to any cause)*: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).
With:
A. Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b . . . .

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.02A

(emphasis in original). The "inability to ambulate effectively"

referred to in Listing 1.02A is discussed in Listing 1.00B2b,

which reads as follows:

*b. What We Mean by Inability to Ambulate Effectively*
(1) *Definition*. Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
(2) *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a

> block at a reasonable pace on rough or uneven
> surfaces, the inability to use standard public
> transportation, the inability to carry out routine
> ambulatory activities, such as shopping and banking,
> and the inability to climb a few steps at a reasonable
> pace with the use of a single hand rail. The ability
> to walk independently about one's home without the use
> of assistive devices does not, in and of itself,
> constitute effective ambulation.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.00B2b
(emphasis in original).

In support of his assertion of *per se* disability, Godfrey
relies on a "physical capacities evaluation" form completed by
Dr. Selim El-Attrache, a treating orthopedic surgeon, on April
3, 2008. (ECF No. 9 at 12). On the form, Dr. El-Attrache
reported that Godfrey could sit for up to seven hours, stand for
up to two hours, drive for up to two hours, and walk for up to
one hour during the course of an eight-hour workday. (R. at
738). Godfrey contends that his alleged inability to walk for
more than one hour per workday constitutes an "inability to
ambulate effectively" within the meaning of Listing 1.02A. (ECF
No. 9 at 12). This contention, however, is wholly lacking in
merit.

In order to show that he cannot "ambulate effectively" for
purposes of Listing 1.02A, Godfrey must demonstrate that his
injury precludes him from engaging in "independent ambulation"
without using an assistive device (or a pair of assistive

devices) "that limits the functioning of *both* upper extremities." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.00B2b(1) (emphasis added). Godfrey testified that he needed to use a cane in order to stand or walk. (R. at 42). The ALJ noted both at the hearing and in his opinion that Godfrey normally held the cane in his right hand even though the meniscus tear was in his left knee. (R. at 14, 41). The record contains no documentary or testimonial evidence suggesting that *both* of Godfrey's upper extremities are occupied by an "assistive device" when he walks.[9] Moreover, Godfrey testified that he could walk anywhere from two to four blocks before his pain would increase or his knee would start to swell. (R. at 42-43). The record is devoid of evidence indicating that Godfrey cannot "walk a block at a reasonable pace on rough or uneven surfaces." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.00B2b(2). The "inability to ambulate effectively" referenced in the applicable Listings constitutes "an *extreme* limitation of the ability to walk." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.00B2b(1)(emphasis added). An impairment preventing an individual from walking for more than

---

[9] The language contained in subsection J4 simply articulates the manner in which a physician should determine whether an individual needs a "hand-held assistive device" in order to ambulate. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.00J4. It does not describe a freestanding impairment that could independently enable an individual to qualify as *per se* disabled. Godfrey's reliance on subsection J4 is misplaced. (ECF No. 9 at 12).

13

one hour during the course of an eight-hour workday simply falls short of that standard.

At the hearing, the ALJ asked Dr. Bentivegna a series of hypothetical questions concerning an individual's ability to perform the duties of specific jobs with certain functional limitations. (R. at 53-58). The ALJ's first hypothetical question corresponded very closely with his ultimate residual functional capacity finding.[10] (R. at 53-54). In response to that question, Dr. Bentivegna testified that an individual with the limitations mentioned by the ALJ could work as an assembler, a sticker, a lacer, or a sack repairer. (R. at 54). Dr. Bentivegna responded in the negative when asked whether an individual needed to stand or walk in order to perform the duties of the jobs that he had identified. (R. at 56). Nonetheless, he stated that an individual could perform the duties of those jobs while standing, and that individuals holding those positions were typically afforded a sit/stand option. (R. at 56). The ALJ proceeded to ask Dr. Bentivegna whether a right-handed individual could perform the duties referenced in his testimony while holding a cane in his or her

---

[10] The hypothetical question described an individual who could not be exposed to heights or dangerous machinery. (R. at 54). These limitations were not included in the ALJ's residual functional capacity finding. (R. at 13). Nevertheless, all of the limitations contained in the residual functional capacity finding were incorporated within the hypothetical question, thereby rendering Dr. Bentivegna's testimony reliable. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004).

right hand in order to remain in a standing position. (R. at
56-57). Dr. Bentivegna responded by stating that an individual
could not perform such duties without the use of his or her
dominant hand. (R. at 57).

Godfrey argues that Dr. Bentivegna's testimony requires the
reversal of the ALJ's decision in this case. (ECF No. 9 at 3-4,
18-19). He contends that the ALJ erred in determining that he
could perform the duties identified by Dr. Bentivegna, given Dr.
Bentivegna's testimony that such duties could not be performed
from a standing position by an individual who needed to hold a
cane in his or her dominant hand. (ECF No. 9 at 18). The
problem with Godfrey's argument is that it fails to distinguish
between the ALJ's *hypothetical* questions and his ultimate
residual functional capacity finding. The ALJ never determined
that Godfrey needed to hold a cane in order to stand. (R. at
13). The ALJ specifically noted in his opinion that Dr.
Bentivegna had been asked some hypothetical questions containing
limitations that were not credibly established in the record.
(R. at 17-18). A residual functional capacity assessment need
not account for every limitation *alleged* by a claimant.
*Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir.
2005)(explaining that only "credibly established" limitations
must be reflected in an administrative law judge's residual
functional capacity assessment and corresponding hypothetical

question to a vocational expert). Moreover, Dr. Bentivegna

testified that the positions which he had identified did not

require an individual to stand or walk. (R. at 56). The ALJ

relied on this testimony in determining that Godfrey was capable

of holding those positions. (R. at 17). Godfrey's argument

concerning Dr. Bentivegna's testimony provides no basis for

setting aside the ALJ's findings.

At the conclusion of the hearing, Godfrey's counsel asked

the ALJ to consider Social Security Rulings 03-2p, 96-9p and 83-

10[11] in making his decision.[12]  (R. at 58).  The ALJ did not

specifically refer to these Rulings in his opinion.  (R. at 9-

18).  Godfrey now argues that the ALJ's failure to discuss these

Rulings renders his residual functional capacity finding

defective.  (ECF No. 9 at 4, 15-18).

It is beyond dispute that the ALJ was required to consider

(and discuss) all pertinent *evidence* contained in the record

that was of significant probative value. *Johnson v.*

*Commissioner of Social Security*, 529 F.3d 198, 203-205 (3d Cir.

2008).  Nonetheless, he was not required to specifically mention

the Social Security Rulings referenced by Godfrey, provided that

---

[11] Godfrey's counsel apparently meant to say "83-12" when he said "83-10."  (R.
at 58).  In his brief, Godfrey relies on Social Security Ruling 83-12 rather
than Social Security Ruling 83-10.  (ECF No. 9 at 4, 17).
[12] Social Security Rulings do not have the force of law. *Newell v.*
*Commissioner of Social Security*, 347 F.3d 541, 546, n. 4 (3d Cir. 2003).
Nevertheless, they prospectively bind all components of the SSA at the time
of publication. *Id.*

the principles embodied in those Rulings were correctly applied.
A court that correctly applies a legal principle is not
ordinarily subject to reversal simply for failing to identify
the origin of that principle. *Good News Club v. Milford Central
School*, 533 U.S. 98, 109, n. 3, 121 S.Ct. 2093, 150 L.Ed.2d 151
(2001)("We do not necessarily expect a court of appeals to
catalogue every opinion that reverses one of its precedents.").
Thus, in order to impugn the ALJ's residual functional capacity
assessment under these circumstances, Godfrey must demonstrate
that the Rulings dictated a different result than that reached
by the ALJ in this case.

On February 7, 2007, Dr. Mamdough El-Attrache completed an
"employability assessment form" for the Pennsylvania Department
of Public Welfare ("DPW") indicating that Godfrey was
"temporarily disabled." (R. at 735-736). Dr. Attrache reported
that Godfrey's "disability" was expected to last for at least
twelve months.[13] (R. at 736). On the form, Dr. Attrache listed
"chronic pain syndrome" as a secondary diagnosis. (R. at 736).

Social Security Ruling 03-2p governs the Commissioner's
treatment of a claimant suffering from a "chronic pain syndrome"
resulting from "trauma to a single extremity." 68 Fed. Reg.
59971, 59972 (2003). The Ruling provides that a finding of

---

[13] The expected duration of Godfrey's "disability" reported by Dr. Attrache was
significant because of the Act's twelve-month durational requirement.
*Barnhart v. Walton*, 535 U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330
(2002).

17

"disabled" is not precluded where a "younger person" is afflicted with this impairment. *Id.* at 59975. In this case, however, the ALJ never determined that a finding of "disabled" was *precluded* by the nature of Godfrey's impairment. Instead, he concluded that Godfrey was not "disabled" based on the criteria applicable under the Act and the Commissioner's regulations. That is exactly the type of evaluation required under Social Security Ruling 03-2p. *Id.* at 59975 ("The conclusion about whether such individuals are disabled will depend primarily on the nature and extent of their functional limitations or restrictions.").

Social Security Ruling 96-9p does not help Godfrey's argument. The applicable language of that Ruling reads as follows:

> *Medically required hand-held assistive device*: To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.
>
> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically

required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand. For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.

61 Fed. Reg. 34478, 34482 (1996)(emphasis in original; footnote omitted). On August 1, 2007, Dr. Mamdouh El-Attrache prescribed a cane for Godfrey. (R. at 737). The prescription form, however, provided no information "describing the circumstances for which it [was] needed." 61 Fed. Reg. 34478, 34482 (1996). Dr. Selim El-Attrache reported on January 22, 2008, that Godfrey was using a cane for *ambulation*. (R. at 743). Godfrey points to nothing in the documentary record which suggests that he needs to use a cane in order to *stand*. His testimony at the hearing is the only evidence in the record indicating that he cannot stand without using a cane. (R. at 42). Hence, Godfrey cannot satisfy the portion of Social Security Ruling 96-9p requiring "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and

19

describing the circumstances for which it is needed . . . ." 61
Fed. Reg. 34478, 34482 (1996).

As Social Security Ruling 96-9p explicitly recognizes, "an
individual who must use a hand-held assistive device to aid in
walking or standing because of an impairment that affects one
lower extremity . . . may still have the ability to make an
adjustment to sedentary work that exists in significant
numbers." *Id.* The record contains no evidence indicating that
Godfrey "must use such a device for balance because of
significant involvement of both lower extremities . . . ." *Id.*
Furthermore, Dr. Bentivegna clearly stated that the positions
identified in his testimony did not require an individual to
stand or walk. (R. at 56). It is difficult to fathom how
Godfrey believes that the result in this case would have been
different if the ALJ had expressly applied Social Security
Ruling 96-9p.

Godfrey relies on Social Security Ruling 83-12 for the
proposition that most sedentary positions require an individual
to use both of his or her hands. (ECF No. 9 at 17). It is true
that an individual's ability to engage in sedentary work
activities can be compromised by a limitation restricting his or
her use of an upper extremity. *Wright v. Massanari*, 321 F.3d
611, 615-616 (6th Cir. 2003). Nevertheless, the record contains
no evidence suggesting that Godfrey suffers from an arm

impairment. Dr. Bentivegna testified that the relevant job
duties could not be performed (from a standing position) by an
individual whose dominant hand was occupied by a cane, since he
or she would need to use that hand in order to complete his or
her work-related tasks. (R. at 56-57). As noted earlier,
however, he also testified that those duties could be performed
from a sitting position. (R. at 56). Moreover, the ALJ never
determined that Godfrey needed to use a cane in order to stand.
(R. at 13). Consequently, the portion of Social Security Ruling
83-12 relied upon by Godfrey is inapplicable to this case. (ECF
No. 9 at 17).

In support of his request for review, Godfrey submitted
documentary evidence to the Appeals Council that had never been
presented to the ALJ. (R. at 4, 773-814). Except for the
results of a magnetic resonance imaging ("MRI") scan conducted
on March 30, 2007, all of this evidence postdated the ALJ's
decision. (R. at 773-814). Godfrey argues that, in light of
this additional evidence, the Appeals Council erred in denying
his request for review. (ECF No. 9 at 4, 14-15).

Section 405(g) of the Act clearly permits an unsuccessful
claimant to seek judicial review of "any final decision of the
Commissioner of Social Security made after a hearing to which he
[or she] was a party . . . ." 42 U.S.C. § 405(g). This
statutory provision provides a claimant with his or her

21

exclusive avenue for redress. 42 U.S.C. § 405(h). The Supreme Court has construed § 405(g) to mean that a federal court has jurisdiction to review *only* a "final decision" made by the Commissioner "after a hearing." *Califano v. Sanders*, 430 U.S. 99, 108-109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Where the Appeals Council denies a claimant's request for review, the decision made by the administrative law judge becomes the final decision of the Commissioner in his or her case. *Sims v. Apfel*, 530 U.S. 103, 106-107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). The Appeals Council's decision denying the request for review does not constitute a "final decision" within the meaning of § 405(g). *Bacon v. Sullivan*, 969 F.2d 1517, 1519-1521 (3d Cir. 1992). No statutory provision provides this Court with jurisdiction to review the Appeals Council's decision denying Godfrey's request for review. *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). Accordingly, the Court has no occasion to consider the arguments raised by Godfrey concerning the actions (or inactions) of the Appeals Council. (ECF No. 9 at 4, 14-15).

The sixth sentence of § 405(g) provides that a reviewing court may order the taking (and consideration) of additional evidence by the Commissioner "upon a showing that there is new evidence which is material," and that the claimant had "good cause" for failing to present such evidence to the Commissioner during the course of the prior administrative proceedings. 42

22

U.S.C. § 405(g). Godfrey contends that the evidence submitted to the Appeals Council in support of his request for review constitutes "new and material evidence" because it "directly pertains" to his "left knee impairment." (ECF No. 9 at 15). Even though the additional evidence submitted to the Appeals Council *pertains* to Godfrey's knee impairment, it does not warrant a remand for further consideration of his claims. Evidence is not considered to be "new" within the meaning of § 405(g) if it is "merely cumulative of what is already in the record." *Szubak v. Secretary of Health & Human Services*, 745 F.2d 831, 833 (3d Cir. 1984). Furthermore, Godfrey cannot satisfy the "materiality" standard without showing that there is a "reasonable possibility that the new evidence would have changed the outcome of the [Commissioner's] determination." *Id*. Godfrey points to nothing in the documents submitted to the Appeals Council that would have impugned the ALJ's decision in this case. (ECF No. 9 at 14-15). Accordingly, a remand for further consideration of Godfrey's claims for DIB and SSI benefits is not justified.[14]

---

[14] Since the ALJ's decision denying Godfrey's claims for DIB and SSI benefits (*i.e.*, the Commissioner's "final decision") was rendered on April 23, 2008, there is nothing preventing Godfrey from relying on the additional evidence submitted to the Appeals Council to support subsequently-filed claims. The Court notes that Godfrey remained insured for benefits under Title II through June 30, 2009, which was more than a year after the date of the ALJ's decision. (R. at 9).

23

The ALJ's determination that Godfrey was capable of engaging in *sedentary* work activities is amply supported by the record. Dr. Jeffrey N. Kann, who examined Godfrey on December 27, 2004, reported that he could perform a limited range of *medium* work. (R. at 497). On May 22, 2006, Dr. Patrick DeMeo opined that Godfrey could perform *light* work.[15] (R. at 528). Dr. DeMeo indicated on January 4, 2007, that Godfrey could perform *medium* work. (R. at 567). Two nonexamining medical consultants suggested that Godfrey was capable of performing *light* work. (R. at 272-278, 326-332). The arguments advanced by Godfrey provide no basis for disturbing the ALJ's decision.

## VI. Conclusion

For the foregoing reasons, the decision of the Commissioner is "supported by substantial evidence." 42 U.S.C. § 405(g). Therefore, the Court will deny Godfrey's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the Commissioner's administrative decision.

AND NOW, this $\underline{\phantom{1}2\phantom{1}}$ day of May, 2011, IT IS HEREBY ORDERED that the motion for summary judgment filed by the Plaintiff (*ECF No. 8*) is **DENIED**, and that the motion for summary

---

[15] The ALJ accorded "great weight" to Dr. DeMeo's opinion. (R. at 15). It is significant that Godfrey does not directly challenge the ALJ's evaluation of the medical evidence with respect to the residual functional capacity determination. (ECF No. 9 at 15-19). By focusing on Social Security Rulings that do not help his case, Godfrey implicitly concedes that the ALJ's residual functional capacity assessment was firmly grounded in the documentary evidence.

judgment filed by the Defendant (*ECF No. 12*) is **GRANTED**. IT IS

FURTHER ORDERED that the administrative decision of the

Commissioner of Social Security is hereby **AFFIRMED**.

BY THE COURT:

_____

Gary L. Lancaster
Chief United States District Judge

cc: All counsel of record